UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

N° 06-CR-232 (JFB)
_____

UNITED STATES OF AMERICA,

versus

CHUNON BAILEY,

Defendant.

_____

**MEMORANDUM AND ORDER**
January 19, 2010
_____

JOSEPH F. BIANCO, District Judge

Petitioner Chunon Bailey (hereinafter, "Bailey" or "petitioner") has filed a motion in this Court, pursuant to 28 U.S.C. § 2255, seeking an Order vacating the August 22, 2007 judgment of conviction and ordering a new trial. In the alternative, Bailey seeks an evidentiary hearing on the issues raised in the motion. The sole claim raised in the motion is that trial counsel's failure to introduce at a suppression hearing certain evidence regarding the layout of the residence at issue constituted ineffective assistance of counsel because it resulted in an erroneous decision by the Court on Bailey's pre-trial motion to suppress certain evidence and statements. For the reasons set forth below, Bailey's motion is denied in its entirety on the merits without an evidentiary hearing because, although the Court has credited Bailey's version of the relevant facts in his motion regarding the layout of the residence (which is not disputed by the government), the record conclusively shows that Bailey is not entitled to relief.

I. BACKGROUND

A. The Charges

Bailey was indicted on April 6, 2006 on three counts, all relating to the events of July 28, 2005. Count One charged that Bailey possessed with intent to distribute at least five grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). Count Two charged Bailey with being a felon in possession of one or more firearms, in violation of 18 U.S.C. § 922(g)(1). Count Three charged Bailey with using and carrying firearms in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

B. The Motion to Suppress

On June 2, 2006, Bailey's initial court-appointed attorney advised the Court in a letter that Bailey had expressed concerns about his representation and requested that the Court consider substitution of counsel at a status conference scheduled for June 8, 2006. Counsel further advised that he would proceed with filing the pre-trial motions due on June 7, 2006, but requested that Bailey be provided with an opportunity to supplement, amend, or withdraw the motions after the representation issue was resolved.

On June 7, 2006, Bailey's initial court-appointed attorney moved to suppress physical evidence and statements obtained on the day of his arrest, arguing, *inter alia*, that: (1) the police had no authority to detain Bailey, pursuant to the execution of a search warrant at a residence, once they allowed him to leave the immediate area of the residence that was about to be searched; (2) any statements made during that detention were obtained in violation of his constitutional rights because the officers failed to advise him of his rights under *Miranda v. Arizona*, 384 U.S. 486 (1966); and (3) the police had no authority to seize Bailey's keys during such detention.

At the status conference on June 8, 2009, at defendant's request, the Court substituted the law firm of LaRusso & Conway as Bailey's court-appointed Criminal Justice Act counsel. The Court also provided new counsel with an opportunity to supplement, amend, or withdraw the motions submitted by prior appointed counsel. On June 21, 2006, new appointed counsel advised the Court that Bailey intended to rely upon the motion papers submitted by prior counsel and, thus, no additional motions or submissions were necessary.

On July 27, 2006, the Court heard argument on Bailey's motion to suppress. On August 2, 2006, the Court conducted an evidentiary hearing regarding the motion.

C. The Suppression Hearing

The two law enforcement officers who detained Bailey on the day of his arrest testified at the hearing. Bailey called no witnesses. After evaluating the credibility and demeanor of the witnesses and the other evidence offered at the hearing, the Court made the following findings of fact.[1]

On July 28, 2005, the Suffolk County Police Department obtained a search warrant, issued by Judge Lotto of the First District Court in the Town of Islip, New York, authorizing the search for a .380 handgun at the rear basement apartment (hereinafter, the "apartment" or "residence") in a house located at 103 Lake Drive, Wyandanch, New York. In connection with the search, the officers executing the search warrant had a general description from an informant regarding the individual who occupied that apartment–namely, "a heavy set black male with short hair" and the name "Polo." (Hearing Tr. 15-16, 49-50; Ex. 1.)[2]

---

[1] These findings of fact were set forth in the Court's Memorandum and Order, dated Sept. 6, 2006, denying the motion to suppress. *See United States v. Bailey*, 468 F. Supp. 2d 373, 376-78 (E.D.N.Y. 2006). However, for purposes of convenience, these facts are repeated here.

[2] "Hearing Tr." refers to citations to the transcript of the August 2, 2006 suppression hearing and "Ex." refers to exhibits admitted during that

The search warrant was executed later that evening. At approximately 9:56 p.m., shortly before the execution of the search warrant, Suffolk County Police Detectives Richard Gorbecki and Richard Sneider were in an unmarked vehicle outside the residence conducting pre-search surveillance and observed two individuals (one later identified as defendant Chunon Bailey) leave the gated area that leads only to the basement apartment and enter a black Lexus in the driveway of the residence. Both individuals matched the general physical description provided by the confidential informant in connection with the search warrant. For safety reasons, including a desire to avoid having the defendant potentially alert others in the apartment to the presence of law enforcement, the detectives did not detain the two individuals in the driveway or in sight of the residence; rather they let them drive away and followed the black Lexus for approximately one mile (which took less than five minutes) and stopped the car in the vicinity of the Wyandanch Fire Department. In particular, the detectives were concerned that, if any people who remained inside the residence saw that individuals leaving the residence were being stopped, they could arm themselves or destroy evidence prior to the search. (Hearing Tr. 15-18, 51-54.)

The detectives explained that they waited about one mile to stop the car rather than detain them immediately to prevent people in the residence and people passing down the block going to the residence, from seeing them stop the car. In addition, once the Lexus was off the block and they were able to get directly behind the vehicle, they were located at a busy intersection and, rather than

hearing.

conduct the stop at that busy intersection, the detectives decided to wait until the Lexus turned off that busy road and then conducted the stop at the firehouse. At no time while the detectives were following the Lexus was the Lexus out of the detectives' sight. (Hearing Tr. 19-20, 37, 39, 54.)

After the car was stopped by the detectives, the two occupants were told to step out of the vehicle and to go to the back of the car. They were then patted down to determine if they possessed any weapons. The detectives were particularly concerned about weapons given that the focus of the search warrant was a handgun. As part of the pat-down, hard items were removed from their person including, as to Bailey, his keys on a key ring (including the key to the car) in his front left pocket and his wallet in his back right pocket. Those items were placed on the trunk lid. No weapons were found. (Hearing Tr. 21-24, 55-56, 59.)

At the back of the car, Detective Sneider conducted an identification inquiry as to Bailey, who was the driver of the car. Specifically, he asked Bailey who he was and Bailey stated his name. Sneider then asked where Bailey was coming from and he responded that he was coming from his house. When Sneider asked Bailey for the location of his house, Bailey stated that it was 103 Lake Drive.[3] Sneider then asked Bailey for

---

[3] The other occupant of the car was also patted down and asked his name, as well as where he was coming from, by Detective Gorbecki. After providing his name, this individual stated that he was coming from the house of his friend, Chunon Bailey, and was on his way to his home at South 18th Street in Wyandanch. He also stated that he was on parole, had a 10:00 p.m. curfew, and Bailey was driving him home for that curfew. (Hearing Tr. 23-24.)

3

identification and Bailey took his license out of his wallet and handed it to Sneider. Looking at the license, Sneider noticed that the address was not 103 Lake Drive in Wyandanch, but rather was a Bay Shore address. The fact that the license showed Bay Shore as his town of residence was significant to Sneider because the confidential informant, who had provided information to the detectives in connection with the search warrant, had stated that the person from whom he had bought narcotics had lived in Bay Shore prior to living at 103 Lake Drive. (Hearing Tr. 25, 56-57.)

After conducting the identification inquiry, Bailey and the other occupant of the vehicle were handcuffed for safety reasons to be transported back to 103 Lake Drive and detained during the execution of the search. After being handcuffed, Bailey asked why he was being arrested. In response to Bailey's inquiry, Detective Gorbecki advised him that he was not under arrest, but that he was being detained in connection with a search warrant that was about to be executed at his residence. Bailey then stated that he was not cooperating, he did not live there, and anything found there was not his. (Hearing Tr. 26-27, 45, 58-59.)

The detectives contacted a patrol car to transport Bailey and the other occupant back to the site of the search at 103 Lake Drive. The wallet was returned to Bailey's pants, but the keys (which contained five or six keys, including the key to the black Lexus) were used by Detective Gorbecki to transport the car back to the scene of the search. Uniformed officers drove Bailey and the other individual back to the scene of the search and, as the officers arrived back at the search, they were advised by the entry team that a gun and drugs were in plain view in the apartment.[4] At that time, Bailey and the other individual were placed under arrest and the keys on the key ring were not returned, but were seized incident to the arrest. At some point on the evening of the search of the apartment, a key on Bailey's key ring (along with the car key) was tested and fit the door of the searched apartment, and, at that time, the key and lock were seized for evidence. (Hearing Tr. 27-29, 59-60.)

D. Decision Denying Motion to Suppress

On September 6, 2006, the Court issued a Memorandum and Order denying the motion to suppress in its entirety. *See United States v. Bailey*, 468 F. Supp. 2d 373 (E.D.N.Y. 2006).

Although Bailey argued that the stop of his vehicle violated the Fourth Amendment, the Court held that the stop and his subsequent detention were lawful as a detention during the execution of a search warrant, under *Michigan v. Summers*, 452 U.S. 692, 705 (1981). Specifically, the Court ruled that, "because Bailey was observed leaving the basement apartment at 103 Lake Drive that was about to be searched pursuant to a warrant, the police had the legal authority under *Summers* to detain Bailey for a reasonable period during the execution of the search." *Bailey*, 468 F. Supp. 2d at 378-79. In reaching this decision, the Court rejected Bailey's contention that *Summers* was inapplicable because the police did not detain him immediately as he left the basement apartment area, but rather followed him for a few blocks from the residence for safety

---

[4] A total of less than ten minutes elapsed from the time Bailey was pulled over until he was returned to the search site. (Hearing Tr. 28.)

4

reasons and then detained him. *Id.* at 379-81. The Court also explicitly addressed and rejected the argument that *Summers* was inapposite because the police only saw him leave the gated staircase leading to the basement apartment and had not observed him come out the basement apartment door. In particular, the Court explained in a footnote:

> At the suppression hearing, Bailey's counsel also argued that, because the officers did not physically see Bailey leave the basement apartment door at the bottom of a staircase on the side of the house, but rather observed Bailey emerge from the gated area containing a staircase leading to the door to the basement apartment, the detectives could not say they saw Bailey leave the apartment door and, thus, *Summers* does not apply. The Court finds this argument to be without merit because this factual distinction is of no consequence given the layout of the residence at 103 Lake Drive. More specifically, the Government unequivocally established at the hearing, through photographs and testimony, that the staircase leading to the basement apartment was fully enclosed by a small gated area at the top of the steps (measuring about four feet by six feet) such that, once inside the gate, the only place one could access was the basement apartment. In other words, the gated area was completely separate from the backyard and there was nothing in that small gated area other than a staircase leading to the basement apartment. (Tr. 5-13; Exs. 3-11.) Thus, when the detectives observed Bailey emerge from the gated area, the only place that he could have come from was the basement apartment. Under such circumstances, there was a sufficient factual basis to trigger a lawful detention of Bailey under *Summers* during the execution of the search.

*Id.* at 382 n.6.

The Court concluded in the alternative that, even assuming *arguendo* that there was no authority for the detention under *Summers*, the stop of the defendant's car and brief detention during the search were supported by reasonable suspicion and constituted a lawful investigative detention, pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). *Bailey*, 468 F. Supp. 2d at 382-85. Specifically, the Court determined the following:

> [T]he detectives had a sufficient factual basis – including the fact that Bailey exited the search location and matched the general description provided by the confidential informant – to stop the vehicle. Moreover, that initial information, which was bolstered by Bailey's statement during the stop that 103 Lake Drive was his residence, the other occupant's statement confirming that, and the information on his driver's license, provided more than a sufficient factual basis under *Terry* to transport Bailey a short distance back to his residence and briefly detain him during the search.

*Id*. at 382-83.

5

### E. The Trial and Sentencing

Trial commenced on October 30, 2006. Based upon a motion by the defendant, to which the government had no objection, the trial on the felon-in-possession of a firearm charge set forth in Count Two was bifurcated from Counts One and Three. Thus, it was agreed that the trial on Counts One and Three would proceed first, followed immediately by a trial on Count Two to the same jury.

On the issue of the layout of the residence (which is the subject of the instant motion), the uncontroverted testimony at trial from several witnesses demonstrated that an internal door connected the main house to a basement hallway that led to the rear basement door exit, which also gave access to the basement apartment. First, Detective Daniel Fischer testified that, upon entering the basement, he observed a long hallway and, on one side of the hallway, was a locked door that led to the main house. (Trial Transcript (hereinafter, "Trial Tr.") 210, 273, 276-79.) Second, informant Raheem Cannaday testified that an internal door allowed access to the basement from the main house upstairs. (Trial Tr. 430.) Finally, defense witness Meltona Sykes, who owned the house at 103 Lake Drive, also testified that a door connected the main house with a basement hallway, which led to the rear basement apartment, as well as to the rear basement door exit. (Trial Tr. 586, 593-94, 623-24.)

However, the uncontroverted evidence at the trial also demonstrated that the internal door to the main house in the basement hallway was locked and not accessible to occupants of the basement apartment. For example, the homeowner, Ms. Sykes, testified that the only way the occupants of the basement apartment could get out of the apartment was through the outside rear gate and that the door leading from the basement hallway to the main house was "not accessible" to the people downstairs. (Trial Tr. 624.) Although Ms. Sykes could use the rear basement door to exit the house if she wished, she stated that she only went down there to use the laundry room to wash her clothes. (Trial Tr. 625.) Similarly, Mr. Cannaday testified the only place a person could go when he or she entered that gate was the defendant's apartment door. (Trial Tr. 337-38.) Finally, Detective Fischer noted that the internal door to the main house in the basement hallway was locked. (Trial Tr. 210, 273.) In short, occupants of the apartment were not permitted to access the main house through this internal basement hallway and, thus, had to enter and leave the basement apartment through the rear basement door exit in the gated area. Moreover, although Ms. Sykes physically could not have exited the main house through the rear basement door exit without entering the rear basement apartment, there is no evidence that she actually did so.

On November 8, 2006, the jury returned a guilty verdict on Counts One and Three. The trial was then conducted on Count Two, and, on November 8, 2006, the jury rendered a guilty verdict on Count Two.

On August 22, 2007, the Court sentenced Bailey, as a career criminal under the advisory Sentencing Guidelines, to a total of 360 months' imprisonment. The Court also sentenced Bailey to five-years' supervised release and imposed a $300 special assessment.

F. The Instant Motion

On December 5, 2008, Bailey filed a motion to vacate, under 28 U.S.C. § 2255, seeking an Order vacating the August 22, 2007 judgment of conviction and ordering a new trial.[5] The sole claim raised in the motion is that trial counsel failed to introduce certain evidence at the suppression hearing regarding the layout of the residence at issue and, thus, was constitutionally ineffective. In the alternative, Bailey seeks an evidentiary hearing on the issues raised in the motion. The government submitted its opposition on February 10, 2009. On February 13, 2009, Bailey filed his reply. Oral argument on the motion occurred on July 21, 2009.[6] Bailey's direct appeal is still pending before the United States Court of Appeals for the Second Circuit.

II. LEGAL STANDARD

A. Section 2255 Petition

Pursuant to 28 U.S.C. § 2255, a prisoner sentenced in federal court may "move the court which imposed the sentence to vacate, set aside or correct the sentence" when the petitioner claims "the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). With respect to ineffective of assistance of counsel claims under § 2255, the Supreme Court has stated that "in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *see also Sweet v. Bennett*, 353 F.3d 135, 140-41 (2d Cir. 2003); *accord United States v. Douglas*, 336 F. App'x 11, 15 (2d Cir. 2009) (summary order).

With respect to the issue of an evidentiary hearing, § 2255 states that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Rule 4(b) of the Rules Governing § 2255 Proceedings also provides that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. foll. § 2255. On this issue, the Second Circuit has made clear that "[t]o warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on the claim.'" *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000)). The Second Circuit has set forth detailed guidance on how

---

[5] The motion was brought by the attorney assigned under the Criminal Justice Act to represent Bailey in the appeal of his conviction to the United States Court of Appeals for the Second Circuit.

[6] Based upon counsel for Bailey's request that Bailey be present at the oral argument, the Court ordered that Bailey be transported to this District, and Bailey was present for the oral argument.

7

a district court should determine whether a hearing is necessary. *See Puglisi*, 586 F.3d at 213-15. In particular, the Court noted that, given the absence of pre-motion discovery in a § 2255 case, "a petitioner may need only to identify available sources of relevant evidence rather than obtain it as in civil cases or seek a discovery order from the court under Rule 6 of the Rules Governing Section 2255 Proceedings." *Id.* at 213-14.

In the instant case, applying the above-referenced standard, this Court determines that no evidentiary hearing is warranted because the Court accepts the relevant facts as set forth in Bailey's submission relating to the layout of the apartment (which were uncontroverted at trial and were undisputed by the government in connection with this petition). In other words, the Court accepts that, once you enter the rear basement door from the outside, there is an internal door to the basement apartment and a separate internal door that provides access to the main house. Thus, a person exiting the rear basement door to the outside could have been coming from the main house without ever having been in the basement apartment.[7] As described in detail below, even accepting those facts, the record conclusively shows that Bailey is not entitled to relief because presentation of those facts during the course of the suppression hearing would not have altered the Court's analysis and, thus, could not provide a basis for an ineffective assistance of counsel claim.

---

[7] The government agreed with these facts at oral argument on this motion, which were consistent with the trial testimony of the witnesses. (7/21/09 Transcript of Oral Argument, at 20.)

B. Ineffective Assistance of Trial Counsel

Under the standard promulgated in *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *see also Smith v. Spisak*, - - - S. Ct. - - -, No. 08-724, slip op. at 9 (S. Ct. Jan. 12, 2010) (citing *Strickland*).

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "'wide range of professionally competent assistance,'" and "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . . ." *Strickland*, 466 U.S. at 689. In assessing performance, a court must apply a "'heavy measure of deference to counsel's judgments.'" *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "'A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision,' *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and

'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). Moreover, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 690-91).

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means that the errors were of a magnitude such that they "'undermine[ ] confidence in the outcome.'" *Pavel v. Hollins*, 261 F.3d 210, 226 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 691). Moreover, "[u]nlike the determination of trial counsel's performance under the first prong of *Strickland*, the determination of prejudice 'may be made with the benefit of hindsight.'" *Hemstreet v. Greiner*, 491 F.3d 84, 91 (2d Cir. 2007) (quoting *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994)).

III. DISCUSSION

Bailey argues that defense counsel provided ineffective assistance of counsel at the suppression hearing because counsel failed to provide evidence to the Court regarding the layout of the house that was the subject of the search and such evidence would have altered the Court's determination regarding the legality of Bailey's detention in connection with the search of the basement apartment. In particular, in denying the motion to suppress, the Court found, based upon the testimony of the police officers at the hearing, that the police observed Bailey (and another individual) leave "the gated area that leads only to the basement apartment and enter a black Lexus in the driveway of the residence." *Bailey*, 468 F. Supp. 2d at 376. However, the evidence introduced at trial established that the back door at the bottom of the staircase in the gated area opened into a hallway off which both the basement apartment and the main house could be accessed by opening another door. In other words, the uncontradicted testimony at trial was that a door connected the main house to a basement hallway that led to the rear basement door, as well as to the basement apartment. Thus, Bailey argues, given this layout, the police could not be certain that individuals such as Bailey emerging from the rear basement door had come from the basement apartment; rather, it was possible that Bailey could have been in the main house and simply used the staircase from the main house to the rear basement door to exit the house, without entering the basement apartment. Bailey contends that, had defense counsel introduced the evidence regarding the layout of the house to support this argument, the Court would have found that detention of Bailey in connection with the search was unconstitutional because of the inability to establish with any certainty that he had been in the basement apartment, and the court would thus have granted Bailey's motion to suppress.

As set forth below, the Court concludes that Bailey's ineffective assistance claim has no merit. With respect to the first *Strickland* requirement, Bailey has failed to demonstrate that counsel's performance in connection with the suppression motion, including the failure to introduce evidence regarding the layout of the apartment, fell below an objective standard of reasonableness. In any event, even assuming *arguendo* that the first requirement

9

is met, Bailey has not satisfied the prejudice requirement of *Strickland* because, even if the Court had been aware of this layout of the residence (which is uncontroverted), it would not have changed the Court's determination that the stop, search, and questioning of Bailey on the date in question was constitutionally permissible. In other words, the fact that the rear door of the residence that led to the basement apartment that was the subject of the search also could be accessed by someone from the main house (through an internal door and hallway) does not vitiate the lawfulness of the officers' conduct under *Summers* and *Terry*.[8]

A. Counsel's Performance under *Strickland*

A review of the record demonstrates that counsel for Bailey vigorously and effectively pursued a motion to suppress based upon the contention that the police lacked a legal basis to detain Bailey at the time of the search of the basement apartment. First, Bailey's initial appointed counsel filed a motion to suppress on June 7, 2006 on the ground that Bailey was illegally seized and searched when his car was stopped, without probable cause or articulable suspicion, after it left the driveway of the residence where the search was to take place. Second, when LaRusso & Conway was substituted as the new appointed counsel at defendant's request, counsel continued to pursue the motion to suppress. On July 27, 2006, after oral argument on the motions, the Court scheduled a suppression hearing for August 2, 2006. Counsel was well-prepared for the evidentiary hearing and aggressively cross-examined the two police officers who testified for the government.[9] Moreover, counsel also effectively presented oral argument to the Court following the hearing. Thus, although defendant's motion was denied, the result in no way suggests that counsel was, in any respect, ineffective in representing defendant in connection with that motion. To the contrary, it is clear from the record that counsel performed in a highly competent manner in presenting the defendant's position on the motion.

The only fault that Bailey points to with respect to counsel's performance is the failure to introduce evidence that made clear, contrary to the officers' testimony at the suppression hearing, that someone leaving the rear gate area of the residence would not necessarily have been coming from the basement apartment, but could have accessed that area from the main house. However, counsel's failure to present such evidence to the Court does not equate to ineffective assistance of counsel for several reasons. First, although counsel did not present evidence regarding this fact during the hearing, she did make the Court aware of this fact during the oral argument that followed the

---

[8] The Court notes that the evidence at issue regarding the layout of the residence, as presented by Bailey in this motion, relates to whether there was a sufficient basis for the initial investigatory stop by the police, but it does not relate to the duration of the stop or the conduct during the stop, including the expansion of the stop. Even assuming *arguendo* that Bailey attempted to argue that the evidence regarding the apartment also would have impacted the analysis of the scope and expansion of the stop, such an argument would also be wholly without merit. The Court's analysis of those other issues in the September 6, 2006 Memorandum and Order is also unaffected by this additional evidence and requires no further elaboration.

[9] In fact, in connection with this § 2255 motion, Bailey's counsel concedes that an associate for LaRusso & Conway, in preparation for the hearing, "visited the basement apartment at 103 Lake Drive, Wyandanch, New York, where the Government contended that Mr. Bailey resided at the time of his arrest, and fully familiarized herself with its layout." (Declaration of Susan V. Tipograph, Esq., at ¶ 8).

hearing, in response to a question from the Court:

> THE COURT: But the testimony was that the gate only led to the apartment, right? You might have a good point if it were just a gate to a wide area. His testimony was also supported by the photos that the gate only left the apartment. So I don't understand the distinction between leaving the apartment and leaving a gate that only leads to the apartment.
>
> [DEFENSE COUNSEL]: Your Honor, the gate does not just lead to an apartment. There is a hallway that enters the basement. That is not the only area that they can go to, is an apartment in that basement. The basement door. So the conclusion that the detectives draw is one that is not enough to lawfully stop the defendant.

(Hearing Tr. 85.) Thus, upon learning during the post-hearing questions by the Court that the Court was in part focused on that issue, counsel made the Court aware of the facts and, if that fact had been critical in the Court's determination of the legal issue, certainly the Court would have inquired as to any evidence in the record to support that contention and, if necessary, re-opened the hearing, to obtain such evidence.

Second, counsel was not ineffective for failing to present this fact to the Court because any meaningful exploration of the facts would reveal that it was an extremely weak argument given the factual circumstances that existed in that residence. More specifically, although there was a door that connected the main house to a basement hallway that led to the rear basement door, there was also consistent, undisputed evidence at the trial that this door to the main house was not accessible to the basement tenant and that the main house was sealed off from the basement area. For example, defendant's only witness at trial (Meltona Sykes), who lived in the main house, testified that the door from the main house was "not accessible" to individuals in the basement and that the only way individuals could get out of the apartment was through the gate. (Trial Tr. 623-24). Similarly, although Bailey points to the testimony during the trial of Detective Fischer that a door connected the main house to a basement doorway which led to the rear basement door, Detective Fischer also testified that the door to the main house was locked. (Trial Tr. 210, 273). This testimony was also consistent with the testimony at trial from defendant's crack customer who testified that the defendant's apartment was the only place a person could go once they entered the rear gate. (Trial Tr. 337). Therefore, although it was theoretically possible for a person in the main house to exit through the rear basement door, the undisputed evidence at trial demonstrated that no such practice existed at the residence in question and that the only people using that rear basement door were those entering and leaving the basement apartment. Given these facts, the decision by counsel not to present evidence on this issue, but rather to vigorously challenge the government's evidence on other factual and legal grounds, was not objectively unreasonable. *See, e.g., Mathurin v. United States*, Nos. 01 Civ. 1374(LAP), S1 96 Cr. 129 (LAP), 2007 WL 2589450, at *18 (S.D.N.Y. Sept. 5, 2007) (rejecting contention that trial counsel was ineffective in the handling of the probable cause claim and noting that "[defendant's] ineffective assistance of counsel claim is nothing more than the complaint of a defendant who is disappointed with the denial of the suppression motion"); *United States v. Stevens*, Nos. CRIM.A. 97-0625, CIV.A. 02-0704, 2002 WL 31111779, at *3 (E.D. Pa. Sept. 19, 2002) ("Based on the record, it is clear that defense counsel acted reasonably in seeking to exclude the evidence in question.

11

Counsel moved to suppress the evidence and tried in vain to undermine the Government's case. Petitioner is not entitled to claim ineffective assistance of counsel merely because he lost the motion.").

Finally, and perhaps most importantly, the decision by counsel not to introduce evidence regarding the layout of the residence (including the internal access from the main house to the rear basement door) was not objectively unreasonable because such evidence would not have changed the legal analysis under the Fourth Amendment. More specifically, as discussed below in detail with respect to the prejudice prong, the detention of the defendant on the date in question after he left the gated area was lawful under both *Summers* and *Terry*, even though the rear basement door could lead either to the basement apartment that was the subject of the search warrant or the main house. *See generally United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999) ("Trial counsel's failure to bring a meritless suppression motion cannot constitute ineffective assistance."); *Panton v. United States*, No. 98 Civ. 1881 (SWK), 1999 WL 945523, at *4 (S.D.N.Y. Oct. 18, 1999) ("None of the allegedly omitted facts [from the search warrant affidavit] cited by [the defendant] affect whether the issuance of the warrant was based on probable cause. Therefore, [defendant's] counsel was not ineffective when he decided not to move for suppression of evidence.").

In short, having carefully reviewed the record, the Court concludes that the failure to present evidence regarding the layout of the main house to show that the rear basement door could be accessed by someone in the main house hardly fell below an objective standard of reasonableness. Instead, counsel for the defendant acted in a highly competent manner in connection with all aspects of the motion to suppress, including the hearing, and made all significant decisions, including the decision not to more aggressively pursue the evidence regarding the layout of the residence, in the exercise of reasonable professional judgment. Accordingly, Bailey has failed to satisfy the first *Strickland* requirement. In any event, as set forth below, the second prong under *Strickland* has not been met, even assuming *arguendo* the first requirement was satisfied.

### B. The Prejudice Requirement under *Strickland*

In order to demonstrate prejudice under *Strickland* in connection with the presentation of the suppression motion, a defendant must demonstrate that there was a reasonable probability that the result of the suppression hearing would have been different in the absence of the purported deficiencies of counsel in connection with the motion. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Spisak*, slip op. at 15. Bailey cannot make such a showing in this case. Even assuming *arguendo* that defense counsel's performance fell below an objective standard of reasonableness in failing to present evidence regarding the layout of the residence at the suppression hearing, Bailey has failed to demonstrate prejudice because such evidence would not have altered the outcome under *Summers* or, in the alternative, under *Terry*. In particular, as set forth in the Fourth Amendment analysis below, even though the rear basement door (in addition to accessing the rear basement apartment) could be used to gain access to the main house, the police still had (1) a sufficient basis under *Summers* to briefly detain Bailey shortly after he emerged from the gated area to the rear basement door in order to determine if he was an occupant or resident of the basement apartment that was about to be searched and, if so, to detain him during the search, or, in the alternative, (2) reasonable suspicion under *Terry* to briefly stop Bailey as he left the residence to question him regarding any

connection he had to the basement apartment.[10] The Court will address each issue in turn.

(1) Analysis under *Summers*

As the Court noted in its initial Memorandum and Order, "[i]t is well-settled that, regardless of individualized suspicion, 'officers executing a search warrant for contraband have the authority 'to detain the occupants of the premises while a proper search is conducted.'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Summers*, 452 U.S. at 705). As a threshold matter, to the extent that Bailey suggests that the police must have reason to believe that he was a resident of the premises (as opposed to simply a temporary occupant) of that apartment before detaining him, that contention is incorrect as a matter of law. Although *Summers* itself dealt with the detention of the owner of a house during a search, neither the language nor the rationale of *Summers* was limited to residents, rather than mere occupants, of premises about to be searched. In fact, the *Summers* Court used the word "occupants" rather than "residents" in setting forth its holding. *See Summers*, 452 U.S. at 705 ("Thus, for Fourth Amendment purposes, we hold that a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the *occupants* of the premises while a proper search is conducted.") (emphasis added); *see also Muehler*, 544 U.S. at 98 ("Thus, [an individual's] detention for the duration of the search was reasonable under *Summers* because a warrant existed to search 1363 Patricia Avenue and she was *an occupant* of that address at the time of the search.") (emphasis added). The Second Circuit similarly has used "occupants," rather than "residents," in summarizing the *Summers* holding. *See, e.g.*, *Rivera v. United States*, 928 F.2d 592, 606 (2d Cir. 1991) ("Absent special circumstances, the police of course have the authority to detain *occupants* of premises while an authorized search is in progress, regardless of individualized suspicion.") (citing *Summers*) (emphasis added).

Given the clear language of *Summers*, courts have consistently held that *Summers* applies to any occupants of a search location, whether residents or visitors, and this Court reaches the same conclusion. *See, e.g.*, *United States v. Martinez-Cortes*, 566 F.3d 767, 770 (8th Cir. 2009) ("Later cases [after *Summers*] have confirmed that this authority to forcibly detain during the warrant search extends to all occupants of the premises, not just the owner or the subject of the warrant.") (citations omitted); *United States v. Sanchez*, 555 F.3d 910, 918 (10th Cir. 2009) ("We therefore conclude that the authority to detain relates to all persons present on the premises."); *United States v. Fountain*, 2 F.3d 656, 663 (6th Cir. 1993) ("[W]e conclude that the district court correctly rejected [defendant's] argument that the Supreme Court intended that the rule in *Summers* to apply only to 'residents'"), *overruled on other grounds by Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 717 (6th Cir. 1999); *United States v. Taylor*, 716 F.2d 701, 707 (9th Cir. 1983) ("[W]e note that there is no merit to [defendant's] attempt to distinguish *Summers* on the grounds that he lacked an interest in the premises subject to the warrant sufficient for standing and was not at the premises when detained. The Court clearly framed *Summers* in terms of 'occupants', not owners, and explicitly found

---

[10] The focuses of Bailey's § 2255 motion is the Fourth Amendment analysis of the initial stop and not the subsequent actions of the police, such as the questioning and seizure of the keys. In any event, as noted above, the Court fully analyzed the lawfulness of the subsequent actions in the September 6, 2006 Memorandum and Order, which also remains unchanged by the analysis here. *See Bailey*, 468 F. Supp. 2d at 385-93.

no constitutional significance in the fact that some of the 'occupants' were seized on the sidewalk as they were leaving the house."); *United States v. Hunter*, No. 07-CR-265, 2008 WL 2074076, at *2 (W.D.N.Y. May 14, 2008) (holding that *Summers* "applies to all those present at the time of the search, not just 'owners' or 'tenants'"). In the instant case, this Court likewise concluded that the police did not have to know that the two individuals leaving the rear basement door of the residence to be searched, one of whom was Bailey, were residents in order to detain them under *Summers*.

Bailey's main contention in connection with the ineffective assistance claim is not limited to his belief that the police could not establish with any degree of certainty that Bailey was a resident of the basement apartment in question; rather, Bailey argues that the police could not even establish that he had been an occupant of that basement apartment simply by seeing him emerge from the gated area leading from the rear basement door. In other words, Bailey suggests that, because someone such as Bailey emerging from the rear basement door could possibly have been using the door as a way to exit the main house without ever having been present in the basement apartment, the police had an insufficient basis to stop him under *Summers* as an occupant of the basement apartment. The Court disagrees. The rear basement door was clearly the entrance and exit for the occupants of the basement apartment that was the subject of the search. The fact that someone from the main house could possibly have decided to use that rear basement door to exit the house (without having been an occupant of the basement apartment) does not mean that the police have no legal authority to detain individuals emerging from the rear basement door at the time of the search in order to ascertain whether they are residents or occupants of the basement apartment. To the contrary, the police under *Summers* may briefly stop someone under these particular circumstances to ascertain whether they are occupants or residents of the apartment to be searched and, if so, then detain them for the duration of the search.

Several federal circuit courts of appeals, under analogous circumstances, have reached the same conclusion. For example, in *Martinez-Cortes*, the police, when arriving to execute a search at a residence, saw a Ford Excursion, which the police had previously observed at the location during surveillance, backing down the driveway. 566 F.3d at 770. Under those circumstances, the Eighth Circuit concluded, among other things, that "it was reasonable to stop the Excursion to determine whether any occupant was a resident of [the house to be searched]." *Id.* In particular, the court, applying *Summers,* held that "the officers acted reasonably in detaining [the driver of the Excursion] while they conducted a records check that might reveal whether he was an occupant of [the residence to be searched]." *Id*.

Similarly, in *Sanchez*, the defendant was standing by a vehicle in the driveway of another individual's home that the police were about to search and, after he was detained under *Summers*, incriminating evidence was found on his person. 555 F.3d at 915. On appeal, the defendant argued that the evidence should have been suppressed because there was no evidence he had ever been in the home about to be searched and, thus, his detention was improper under *Summers* and *Muehler*. *Id*. at 918. The Tenth Circuit, in holding that the detention was lawful, explained the rationale for *Summers* applying to such situations:

> *Summers* and *Muehler* convince us that the officers executing the search warrant had the authority to detain [the defendant]. He argues that his situation is different from those in

*Summers* and *Muehler* because there was no direct evidence that he had been in the home to be searched. But that distinction, in our view, is not compelling. As in the Supreme Court cases, the principal protection afforded [the defendant] is that the warrant was supported by a neutral magistrate's determination of probable cause. Also, the officers had no more cause than in those cases to extend or exploit the detention. And the requisite justifications supporting detention were present here: Detention was necessary to prevent flight and minimize danger. The occasion called for the 'routine[ ] exercise [of] unquestioned command of the situation.' *Summers*, 452 U.S. at 703. Although [defendant] may not have been inside the home, he was on the premises to be searched (which included the home's curtilage). He was clearly not just a passerby; he and [another individual] were with Silvar, the home's owner, by Silvar's truck in the home's driveway, apparently unloading boxes. In the *Summers/Muehler* context we see no principled reason to distinguish a visitor in the home from one engaged with the owner in the area immediately surrounding the home. Other circuits have likewise permitted the detention of a person whom officers had not seen enter or leave the home where a search warrant was being executed, but whose presence at the scene raised a concern about interference with the search.

*Id*. (citations omitted); s*ee also United States v. Cavazos*, 288 F.3d 706, 711 (5th Cir. 2002) (holding that individual leaving residence of home to be searched in a truck could be detained under *Summers* and explaining as follows: "[t]he officers did not know that [defendant] was a resident of the premises until after the search began, but they did know that he was an occupant, and it is the connection of an occupant to the home being searched that gives the officers an 'easily identifiable and certain basis for determining that suspicion of criminal activity justifies a detention of that occupant'") (quoting *Summers*, 452 U.S. at 703-04); *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir. 1995) ("Although *Summers* itself only pertains to a resident of the house under warrant, it follows that the police may stop people coming to or going from the house if police need to ascertain whether they live there."); *accord United States v. Bohannon*, 225 F.3d 615, 616 (6th Cir. 2000) (quoting and citing *Baker*, 50 F.3d at 1192).

Thus, as these cases demonstrate, Bailey's contention—that the police must ascertain with certainty that an individual was an occupant of the location to be searched in order to stop them at all under *Summers*—is simply incorrect. The police need not eliminate every hypothetical possibility before taking action; rather, as long as the police have a reasonable basis to believe that the person has just left or is about to enter the location to be searched, they are permitted under *Summers* to, at a minimum, briefly detain the person in order to ascertain whether he or she is a resident (or was an occupant) of the premises being searched. To hold otherwise, and adopt Bailey's position, would be inconsistent with the facts of *Summers* itself. Specifically, in *Summers*, the police detained an individual who was descending the front steps of the house that they were about to search for narcotics. 452 U.S. at 693. Thus, there was the possibility that the individual had never entered the house and had no connection with the house, such as a salesperson or neighbor who had knocked on the door and was descending the steps after no one had answered. The *Summers* Court, however, found that the individual's

connection to the residence about to be searched was sufficient to allow the police to detain him during the search. *Id*. at 705-06. Therefore, it is clear from *Summers* itself that there is no requirement that the police know for certain that an individual had been inside the home about to be searched before briefly detaining and ascertaining the individual's connection to the location.[11] Instead, emerging from the steps or driveway of the residence provides a sufficient nexus under *Summers*.[12] Here, Bailey had the type of nexus present in *Summers*—he was emerging from the gated area leading to the basement apartment when the police observed him. It was clear from the circumstances that he was more than a mere passerby of the location. His detention, as in *Sanchez*, was necessary in order to prevent flight and minimize danger to the police. Thus, even if defense counsel had introduced evidence at the suppression hearing regarding the internal stairway leading to the main house from inside the rear basement door, it would not have changed the Court's analysis under *Summers*.[13]

Accordingly, under the Court's analysis under *Summers*, the prejudice requirement of *Strickland* has not been met with respect to the evidence that Bailey claims should have been introduced. S*ee, e g.*, *United States v. Price*, 118 F. App'x 465, 469 (10th Cir. 2004) (unpublished opinion) (rejecting ineffective

---

[11] The Court notes that a contrary rule would essentially eviscerate the *Summers* rule in many situations involving homes because, even when someone is seen exiting the door of a residence, there is often a possibility that the house, although not evident from the outside, has been internally divided in some way such that the person seen exiting was an occupant or resident of some separate portion of the house that (legally or illegally) had been created and, thus, no had connection to the main house that is the subject of the search. Here, there is no evidence that, at the time of the search, the police knew of the existence of an internal hallway leading to the main house from the rear basement door (although the Court concludes that their actions would be lawful even if they did, for the reasons set forth *supra*). Thus, applying the exclusionary rule to this situation makes little, if any, sense.

[12] Obviously, a different analysis would apply if this were, for example, a case involving someone emerging from the lobby of a high-rise apartment building. *See, e.g.*, *United States* v. *Reid*, 997 F.2d 1576, 1579 (D.C. Cir. 1993) (applying *Summers* and noting "[w]e recognize that we have created no beacons for police or trial judges to use in navigating the deep waters of Fourth Amendment doctrine. Unfortunately, 'reasonableness' is not a plain meaning word that lends itself to bright-line parsing."). However, here, Bailey was emerging from a home's rear basement door, which was utilized as the entrance and exit for the basement apartment. Under such circumstances, the possibility that the resident in the main house could also access that door does not create sufficient uncertainty regarding those emerging from the door to render *Summers* inapplicable.

[13] Although Bailey also contends that *Summers* does not apply because the police waited (for safety reasons) until he left the vicinity of the residence before effectuating the detention, the Court fully addressed that issue in denying the motion to suppress and will not repeat that analysis here. *See Bailey*, 468 F. Supp. 2d at 378-83. However, the Court does note that, to the extent that Bailey argues in his papers that the intrusion here (in terms of public stigma, inconvenience, and indignity) was necessarily higher than in other cases involving *Summers* because of the location of the arrest, the Court disagrees. If Bailey had been detained immediately outside his residence as he emerged from the gated area, any stigma and indignity from such detention in public view (which could be witnessed by neighbors and others who knew him) would arguably be higher than being detained after a car stop in the non-residential area of a firehouse while the search was being conducted at the residence.

assistance claim in connection with counsel's alleged failure to present certain testimony at the suppression hearing because "[w]e cannot say . . . that, had counsel presented this testimony, there is a reasonable probability that there would have been a different outcome at either the suppression hearing or the trial"); *United States v. Johnson*, Civ. 93-1366-SC, 1997 WL 381926, at *5 (10th Cir. July 7, 1997) (rejecting ineffective assistance claim, based on alleged failure by defense counsel to discover impeachment information about officer who testified at suppression hearing, because defendant did not demonstrate that such evidence "would have created a reasonable probability that the outcome of his suppression hearing would have been different"); *Carroll v. United States*, No. 91-3772, 1992 WL 97040, at *2 (8th Cir. May 13, 1992) (holding counsel not ineffective for failing to require government to produce copies of radio transmission tapes because defendant "cannot establish that counsel's omission prejudiced the outcome of the suppression hearing"); *Coronado v. Ward*, No. 04-CV-817-HDC-FHM, 2007 WL 2463253, at *5 (N.D. Okla. Aug. 28, 2007) ("Based upon the record, the Court finds that Petitioner's claim of ineffective assistance of counsel fails because he has not demonstrated a reasonable probability that there would have been a different outcome at the suppression hearing.").

### B. Analysis under *Terry*

The Court holds in the alternative that, even if the evidence regarding the layout of the residence would change the legal analysis and render the detention of Bailey unauthorized under *Summers*, the outcome of the suppression motion would not have been altered because the stop of Bailey was lawful under *Terry* in that it was supported by reasonable suspicion. Specifically, in the September 6, 2006 Memorandum and Order, the Court concluded that the stop was supported by "a sufficient factual basis—including the fact that Bailey exited the search location and matched the general description provided by the confidential informant—to stop the vehicle." *Bailey*, 468 F. Supp. 2d at 382. Assuming *arguendo* the police were aware that the rear basement door also had a hallway leading to the main house (in addition to leading to the basement apartment), that fact would not have been sufficient to undermine the "reasonable suspicion" to justify the stop. Regardless of whether occupants of the main house could use the rear basement door, Bailey's exit from the rear basement door (which was used to access the basement apartment) and the fact that he fit the general description provided by the informant provided reasonable suspicion for the police to stop him to find out whether he was a resident (or occupant) of the basement apartment that was to be searched.

This holding is consistent with the analysis by the Second Circuit and other courts under analogous circumstances. For example, in *United States v. Martinez-Gonzalez*, 686 F.2d 93 (2d Cir. 1982), the police had information that a certain individual was using an apartment as a "stash" location for drugs, and the superintendent of the apartment building stated that a young Hispanic male had leased the apartment one month earlier in the company of the target and had been seen at various other times with the target engaged in suspicious activities. 686 F.2d at 95-96. Upon arriving at the apartment, agents observed the defendant, who matched the general description of the individual with the target that had been provided by the superintendent, standing in the hallway outside the apartment door. *Id.* at 96. Under those circumstances, the Second Circuit held that there was reasonable suspicion to stop the defendant under *Terry* in order to attempt to interrogate him. *See id.* at 99 ("When [the defendant], who fit the superintendent's description of the young man who had leased

the apartment a month earlier in the company of [the target], appeared in front of the door of apartment 7F, the agents were justified in attempting to interrogate him.").

Similarly, in *United States v. Ramon-Rodriguez*, 492 F.3d 930 (8th Cir. 2007), the police were conducting surveillance outside a home that was a suspected narcotics stash house and that was about to be searched pursuant to a warrant. 492 F.3d at 935. A confidential informant had advised the police that the resident had recently returned from California with a Hispanic male whom the informant believed was a source for the narcotics. *Id*. Immediately prior to the search, officers saw a Hispanic male on the front porch of the home and then observed this man leave the residence with a second Hispanic male in a red Volkswagen Jetta. *Id*. Police stopped the car and, based upon information obtained following the stop, arrested the two men. *Id.* On appeal, one of the occupants of the car challenged the stop on Fourth Amendment grounds, arguing that the stop was based solely on race and was unreasonable under the Fourth Amendment. *Id*. at 943. The Eighth Circuit rejected that argument and held that the officers possessed reasonable suspicion for an investigatory stop under *Terry*. Specifically, the Court concluded that the information supporting the search of the residence, combined with the information supplied by the confidential informant, provided a sufficient basis to stop the vehicle to determine any connection these individuals had to the search location:

> Armed with this information, officers surveilled [the subject] home, observed a Hispanic male on the front porch, and observed that man and another Hispanic male leave the residence in the red Jetta. Based on the totality of this information, it cannot be said that officers stopped the red Jetta merely because a Hispanic person was present, nor can it be said that the officers lacked reasonable suspicion. Although race was an identifying characteristic actually used by the officers, it was not the only factor officers relied upon, and the present case is not an example of racial profiling, as suggested by [the defendant].

*Id*.

Finally, in *United States v. Byers*, No. 97-4965, 1998 WL 462810 (4th Cir. Aug. 5, 1998), police had a warrant to search an apartment occupied by an African-American male. *Id.* at *1. While preparing to execute the warrant, police observed the defendant, also an African-American male, approach the apartment building and climb the stairs that led both to the apartment that was about to be searched and to another apartment. *Id.* A few minutes later, the police saw the defendant descend the stairs carrying car keys and approach a car that the officers knew belonged to the occupant of the apartment. *Id.* The officers stopped and detained the defendant and, during an ensuing search, discovered that he was carrying a gun. *Id.* On appeal, the defendant argued that his detention was illegal. *Id.* The Fourth Circuit disagreed, holding that reasonable suspicion supported the officers' stop of the defendant. *Id.* at *1-2. Specifically, the court noted that the officers reasonably believed the defendant was the occupant of the apartment about to be searched "because [the defendant] was about to enter [the occupant's] car and it appeared that [the defendant] had just left [the occupant's] apartment." *Id.* at *1. Notably, the possibility that the defendant could have walked up the stairs to an apartment other than the apartment about to be searched played no role in the Fourth Circuit's analysis.

In the instant case, the officers had (1) probable cause based upon the search warrant

to believe that a .380 handgun was located in the rear basement apartment, and (2) information from the confidential informant that the resident of the apartment was nicknamed "Polo" and was "a heavy set black male with short hair." When the officers arrived at the residence, they saw two individuals (one of whom was Bailey) emerging from the gated area leading to the basement apartment, both of whom matched the confidential informant's general description of the resident. Given these facts, the officers had reasonable suspicion under *Terry* to briefly stop these men in order to ascertain whether either of them was the resident of the apartment to be searched. Such reasonable suspicion existed even if the officers also knew that the rear basement door could also be used to access the main house. In other words, the reasonable suspicion created by their close proximity to the rear basement door and the match with the informant's general description was not vitiated by the possibility that the individuals could have exited the rear basement door having come from the main house (rather than having come from the rear basement apartment). Given the rapidly developing circumstances that confronted the officers at that point, the officers' decision to stop Bailey and the other individual to determine whether either was a resident or occupant of the rear basement apartment was a reasonable *Terry* stop, and there is simply no basis to second-guess that decision under the Fourth Amendment given these factual circumstances. *See United States v. Gori*, 230 F.3d 44, 55 (2d Cir. 2000) ("Based on the exigencies of the moment—one following the other—what the police did, said and asked at each stage of the encounter was reasonable from a Fourth Amendment perspective. The police had no obvious option, given the circumstances, other than to proceed as they did."); *see also United States v. Sharpe*, 470 U.S. 675, 686 (1985) (stating that in analyzing reasonableness under *Terry*, courts "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing").

In sum, the evidence regarding the layout of the residence in question (and the possibility that someone from the main house could have used the rear door to exit the house, without have come from the basement apartment) would not have altered the Court's legal analysis of the motion to suppress. Even if such evidence had been introduced by counsel, the Court would have adhered to its conclusion that the police officers' conduct was lawful under *Summers* and, in the alternative, under *Terry*. Thus, Bailey cannot demonstrate any prejudice from counsel's failure to offer this evidence. Accordingly, Bailey has failed to satisfy the second *Strickland* prong.

IV. CONCLUSION

For the foregoing reasons, Bailey's motion is denied in its entirety without an evidentiary hearing. The Clerk of the Court shall enter judgment accordingly.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: January 19, 2010
Central Islip, New York

The attorney for the government is Charles P. Kelly, Esq., Assistant United States Attorney, Benton J. Campbell, United States Attorney for the Eastern District of New York, 610 Federal Plaza, Central Islip, New York 11722. The attorney for the defendant is Susan V. Tipograph, Esq., 350 Broadway, Suite 700, New York, New York 10013.